**PATRICIA ELLEN NILL,**

**Plaintiff,**

**-vs-**                                       **Case No.  6:08-cv-509-Orl-31DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** the decision of the Commissioner be **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on May 31, 2005. R. 13, 65, 96. She alleged an onset of disability on May 19, 2005, due to hepatitis, hypothyroidism, degenerative

disc disease, and arthritis in her shoulders and knees. R. 13, 38, 40, 63, 74. Her application was denied

initially and upon reconsideration. R. 13. Plaintiff requested a hearing, which was held on June 20,

2007, before Administrative Law Judge Gerald F. Murray (hereinafter referred to as "ALJ"). R. 13-21.

In a decision dated September 27, 2007, the ALJ found Plaintiff not disabled as defined under the Act

through the date of his decision. R. 21. Plaintiff timely filed a Request for Review of the ALJ's

decision. R. 460-61. The Appeals Council denied Plaintiff's request on March 10, 2008. R. 6-8.

Plaintiff filed this action for judicial review on April 7, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was born August 29, 1953, and was 50 years old on her alleged onset date of July 11,

2004[1]. R. 38, 65, 96. Plaintiff obtained a GED in 1971; she completed a cosmetology program in

1979 and a medical assistant program in 1980. R. 121, 122, 466. Plaintiff's past relevant work

consisted of waitressing from 1989 until 1994 and as a cosmetologist from 1989 until 2005. R. 104,

117, 125-26, 465. Plaintiff was fifty-four years old on the date of the administrative decision.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary,

Plaintiff complained of pain from her neck down the spine to her tail bone as a result of a motor

vehicle accident on July 11, 2004. R. 469-70. After the accident, she attempted to return to work full

time. R. 470. However, she had to stop working as a cosmetologist because her back pain was

aggravated by standing for long hours and working on her feet. R. 414, 467, 479-80, and she

frequently felt nauseous or vomited and experienced incontinence, due to the Hepatitis C. R. 470.

After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that

Plaintiff suffered from Hepatitis C and back pain secondary to degenerative disc disease of the

---

[1]Although the ALJ found that Plaintiff was 53 years old on her alleged onset date (R.20), the error is of no consequence because he categorized her in the correct range of "closely approaching advanced age 50-54." R. 20.

cervical and lumbar spine, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. The ALJ determined that the evidence supported a finding that Plaintiff's depression, hypothyroidism, asthma, arthralgia of shoulders and knees, and obesity had not resulted in any limitations in her ability to perform work-related functions and were not severe. R. 15.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to occasionally lift 20 pounds and frequently lift ten pounds, stand and walk in combination for about six hours in an eight-hour workday, and to sit for at least 6 hours in an 8-hour workday, with a sit/stand option. R. 16. In making this determination, the ALJ found that Plaintiff's allegations regarding her symptoms were not entirely credible for the reasons set forth in the body of the decision. R. 17.

Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work as a hair dresser and a waitress. R. 19. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE") taking into consideration Plaintiff's non-exertional impairments, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an unskilled office helper, photo finisher, and merchandise price marker. R. 20. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 20.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred by failing to consider the effect that Plaintiff's difficulty in using her upper extremities would have on her ability to perform light work. Second, she claims the ALJ erred by failing to properly evaluate her anxiety

disorder under 20 C.F.R. Section 404.1520a or to consider her GAF scores in assessing her mental impairments. Third, she argues that the ALJ's proposed an improper hypothetical to the VE regarding other jobs in the national economy that she can perform. Fourth, she asserts that the ALJ erred by improperly applying an incorrect legal standard by giving significant weight to a Physical Residual Functional Capacity Assessment that was not signed by an acceptable medical source. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### III. ISSUES AND ANALYSIS

#### A.     Illegible signature on  Physical Residual Functional Capacity Assessment

Plaintiff contends that the ALJ applied an incorrect legal standard by giving significant weight to a Physical Residual Functional Capacity Assessment that was "not signed by an acceptable medical source," citing the Social Security regulations ("SSR") which limits the list to licensed physicians, psychologists, optometrists, podiatrists, and qualified speech language pathologists. 20 C.F.R. § 404.1513(a)(1)-(5). Plaintiff points to the ALJ's reliance on a July 28, 2005 Physical Residual Functional Capacity Assessment of a State agency reviewing physician (R. 19), whose signature is

illegible. R. 212. The ALJ relied on the state agency reviewing physician's opinion that Plaintiff could perform light work with only occasional climbing, balancing, stooping, kneeling, crouching and crawling. R. 19 (citing R. 213).

Plaintiff argues that "there is no indication that the opinion came from a physician or any other acceptable medical source" because "there is an illegible signature of a disability examiner, but there is no indication that the examiner was a doctor," citing R. 218. Doc No. 11 at 13. Unfortunately that single page containing the illegible signature is missing from the record[2] before the Court, although the Index description does state it is the report of a "physician."

The Commissioner does not dispute that the signature is illegible. Doc. No. 14 at 17. The Commissioner argues that Plaintiff's argument that the illegible signature is not by a "physician" is entirely speculative and ignores the fact that the record was also reviewed by a second physician who reached the same conclusion at the reconsideration level.

The Commissioner argues that there were two levels of review, at the initial and reconsideration steps of the administrative process, with two state agency physicians who reviewed the record and opined on Plaintiff's RFC based upon the evidence available at that time, *see* 20 C.F.R. §§ 404.1527(f)(1), 404.1546(a). In this case, the second physician, Dr. Donald Morford, reviewed Plaintiff's medical records at the reconsideration level in November 2005 and reached the virtually identical conclusion as the state consultant at the initial level (whose signature is illegible).

The ALJ discussed the opinions of both state agency reviewers in his decision, quoting extensively the objective medical findings that were listed by the reviewing medical consultants on

_____

[2]There is a statement on the Court Transcript Index page dated April 28, 2008: "The documents and exhibits contained in this administrative record are the best copies obtainable." There is no explanation why page 218 is missing, and it is listed in the Index.

both RFC assessment. R. 18-19, citing July 2005 RFC and November 2005 RFC. He cited the July 2005 RFC assessment as opining that the claimant could perform work at the light exertional level but that she could only occasionally climb, balance, stoop, kneel, crouch and crawl, and should avoid exposures to vibration and hazards. R. 18, citing 212-13. The ALJ noted that the more recent RFC assessment from November 10, 2005 (of Dr. Morford), also assessed that the claimant could perform at the light exertional level with some environmental and postural limitations. R. 18, citing 321-22.

The ALJ gave "significant weight to the opinion of the State agency physicians since these opinions are consistent with the medical evidence" and in part because there were no treating source medical opinions which addressed Plaintiff's ability to perform work-related activities. R. 19. Although the signature (last) page of the July 2005 RFC assessment is missing from the record, the first seven pages of the eight-page report are in the record. R. 212-27. Most importantly, the exertional limitations and postural limitations which the ALJ discussed *are* in the record and these are virtually the same limitations[3] as recommended by Dr. Morford. Moreover, the ALJ adopted *Dr. Morford*'s precise opinion of Plaintiff's exertional limitations from his November 2005 RFC Assessment. The ALJ found Plaintiff had the RFC to "occasionally lift 20 pounds and frequently lift ten pounds, stand and walk in combination for about six hours in an eight-hour workday, and to sit for at least 6 hours in an 8-hour workday[4]" (R. 16) which are exactly the same as Dr. Morford's opinion of Plaintiff's exertional limitations. R. 321. The ALJ clearly relied on Dr. Morford's RFC Assessment, whether or not he also considered the earlier (July 2005) assessment for which the signature was illegible; as such, the ALJ's decision was based on substantial evidence.

---

[3]The only exception is the single limitation that Plaintiff should "never" climb ladders, rather than the limitation that she should only "occasionally" climb ladders. *Compare* R. 322 to 213. According to the DOT entries identified by the VE as the positions Plaintiff could perform, these positions do not require *any* climbing. *See* Doc. No. 14-2 (DOT entries).

[4]The ALJ added the sit/stand option, which was not in Dr. Morford's RFC Assessment. R. 16.

**B.     Mental Impairment**

Plaintiff argues that the ALJ failed to properly evaluate her mental impairment in the form of an anxiety disorder demonstrated in part by her Global Assessment of Functioning (GAF) scores by applying the SSR for mental impairments, 20 C.F.R. § 404.1520a.  The Commissioner contends that the ALJ was not required to reach this determination and rate the degree of Plaintiff's limitations in the four categories as required in § 404.1520a because the evidence did not establish a medically determinable mental impairment.

The ALJ in this case found that several of Plaintiff's conditions, including depression, had not resulted in any limitations in her ability to perform work-related functions, and was therefore not severe.  At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that her impairment is not so slight and its effect not so minimal.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The Commissioner argues that the ALJ is first required to analyze the evidence to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Only if a claimant has a mental impairment is the ALJ then required to rate the degree of functional limitations resulting from any mental impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence and pace and (4) episodes of decompensation. 20 C.F.R.

§ 404.1520a(c)(3)[5].  The Commissioner contends that in this case, the ALJ was not required to rate the degree of functional limitations in the four categories listed above or use those ratings at steps two and three of the sequential evaluation process because the evidence does not establish a medically determinable mental impairment.

The Commissioner argues that the regulations require that a mental impairment be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the Plaintiff's statement of symptoms, citing 20 C.F.R. § 404.1508.  In this case, the Commissioner contends, the objective clinical findings of the doctors and other health care providers treating Plaintiff fall short of establishing a medically determinable mental impairment, and the same findings contradict the GAF scores assigned during Plaintiff's treatment at the VA.

In support of a mental impairment, Plaintiff first points to the mental health consultation she underwent for anxiety at the Veterans Administration ("VA") Outpatient Clinic at Daytona Beach on January 3, 2007.  R. 340-41.  Plaintiff "had a problem with people, edginess and anxiety-like attacks." R. 340.  She stated that she was in a motor vehicle accident in 2004 and "freaks out when she rides in a car with someone else; she continued to be paranoid when riding as a passenger in a car (R. 357) and she was more irritable. R. 341.  She also told the Nurse Practitioner at the VA that her anxiety worsened when her pain increased and that she wanted help managing her anxiety symptoms. R. 341. She was seen again for anxiety and a panic attack on April 23, 2007.  R. 347.  Treatment notes indicate a GAF score of 55 on January 10, 2007 (R. 364) and 52 on February 1, 2007.  R. 359. Plaintiff also points to her hearing testimony that she has mental problems and is seeing a therapist;

---

[5]The ALJ then uses these findings to determine whether Plaintiff has a severe mental impairment at step two and whether Plaintiff has an impairment which meets or equals a listed impairment at step three. 20 C.F.R. § 404.1520a(d). In the Eleventh Circuit, an ALJ is required to include this analysis in the administrative decision if a claimant presents a colorable claim of a mental impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).

and described "freaking out" episodes. R. 476. Plaintiff contends that despite Plaintiff's testimony and the VA records, the ALJ never considered Plaintiff's anxiety and he did not comply with the SSR governing mental impairment determinations, *i.e.*, requirements to rate the degree of a claimant's disorder in activities of daily living, social functioning, and concentration, persistence or pace on the following five point scale: none, mild, moderate, marked and extreme, and episodes of decompensation . *See* 20 C.F.R. Section 404.1520a(c)(4). Plaintiff argues that the ALJ's decision should be reversed because the ALJ "never mentions that Plaintiff was treated at the VA, much less the specifics of that treatment."

The Commissioner points further back in the medical records closer to the time of Plaintiff's motor vehicle accident in 2004, to the June 28, 2005 consultative examination by Dr. Alvan Barber, who evaluated Plaintiff's mental status; he described her as alert and oriented to time, place and person with no memory deficits, her cognitive functioning and stream of thought were adequate with no flight of ideas or hesitant thinking, her replies to questions were goal directed and relevant, she communicated well and was very cooperative, and her speech was spontaneous, productive and articulate with adequate vocabulary and reaction time. R. 207-09. The amount and range of expression was appropriate to the thought content being expressed, and her speech was fluent, coherent and intelligent with no expressive aphasia, dysarthria, stuttering or involuntary vocalizations. R. 208. Plaintiff demonstrated normal affect with no signs of depression R. 209. The state reviewing psychologist, Dr. Alvarez Mullin, on October 11, 2005, found no evidence of a medically determinable mental impairment based on the medical records at the time. R. 289.

The Commissioner contends that the subsequent treatment records dated 2007 from the VA do not contain findings that would justify a change in Dr. Mullin's analysis, in that Plaintiff's later records do not indicate that Plaintiff has a medically determinable mental impairment.

On January 5, 2006, Plaintiff was seen at the VA by Cynthia Black, a certified psychiatric nurse practitioner. R. 393. Plaintiff stated she was tolerating her treatment for her neck and back injuries without an increase in depression but some increase in her anxiety levels. R. 393. She had had a prescription for alprazolam[6] since 2004 and used it when feeling anxious. R. 393. She had also been prescribed amitriptyline[7] which she told the nurse practitioner which "she says has improved both her neuro pain but also her sleep as well and adds she is now sleeping all night long most nights. R. 393. Plaintiff had no overt symptoms of depression and she denied any, except for occasional intermittent feelings of depression. R. 393. Plaintiff did not feel she needed any mental health intervention at that time. R. 393; *see also* R. 363 (referring to prior treatment). Nurse Black diagnosed Plaintiff with mild depression and anxiety and assigned a GAF score of 55. R. 393.

Plaintiff was not treated at the VA for mental health problems again for nine months, until January 3, 2007, when she saw Nurse Black, and told her that she would "freak out" every time she rode in a car as a result of her motor vehicle accident two years earlier; also described generalized symptoms of irritability and anxiety. R. 363. Plaintiff denied feeling depressed; Plaintiff was hopeful she would be able to return to work in a different profession. R. 363. Nurse Black encouraged Plaintiff to take her medication prior to stressful situations such as riding in a car; she assigned Plaintiff a GAF score of 55. R. 363-64.

---

[6]Alprazolam is sold under the trade name Xanax, a short-action drug used to treat anxiety disorders. http://mental-health.emedtv.com.

[7]Amitriptyline is used to treat depression and is extremely sedating. It is also used to treat chronic pain and other pain syndromes. http://psyweb.com.

Plaintiff returned to the VA on February 1, 2007 for counseling for pain management and relaxation skills and was treated by Fanita Jackson-Norman, LCSW. R. 356. Plaintiff had started hepatitis C treatments two months before the visit and told Ms. Jackson-Norman that "she has been tolerating it without increase in depression" but believed "it may be increasing anxiety levels to some degree." R. 356. Her problem list was "anxiety; paranoia when riding in the car with others" and the plan was for her to participate in individual counseling using relaxation techniques and CBT." R. 359.

On March 1, 2007, Plaintiff returned to the VA because she had run out of Xanax and her pain medications, and was consequently feeling more anxious and not sleeping well due to her muscles tightening up. R.355. She stated she had difficulty being a passenger in cars following the two accidents that she was involved in, and would like to being medications for anxiety again and, according to Plaintiff "this helped her cope better." R. 355. The same licensed social worker who had treated Plaintiff in February categorized her as only "slightly depressed" on March 1, 2007. R. 355. VA treatment notes from March 28, 2007, indicate that Plaintiff continued to have symptoms of "passenger anxiety" when she was riding in a car with her husband. R. 350 . However, Plaintiff was attempting to add more physical duties to her daily routine and *hoped to be able to try and work part-time*. R. 350. Ms. Jackson-Norman described Plaintiff as calm and cooperative with good eye contact as well as clear, logical and goal directed thoughts R. 350.

When the treatment notes from the VA are taken as a whole, Plaintiff's depression was considered "slight" or she denied having depression symptoms. Although Plaintiff had an anxiety disorder – passenger anxiety – that only occurred in the car (as opposed to a work setting), was controlled with the medications, and Plaintiff herself told the VA counselors that she was hoping to work part-time. As the Commissioner points out, GAF scores between 51 and 60 indicate the

presence of (1) moderate symptoms such as a flat affect, circumstantial speech, and occasional panic attacks; or (2) moderate difficulty in social, occupational, or school settings. *See* Doc. No. 14-2, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, TEXT REVISION 2000 (DSM-IV-TR 2000). In this case, the VA counselors' thorough treatment notes are more indicative of Plaintiff's condition than a single GAF or two scores for a thirty-day period, especially when, at the next visit, Plaintiff was described as only "slightly depressed." R. 355. The medical and other evidence support the ALJ's determination that Plaintiff did not suffer from a severe mental impairment.

### C. Plaintiff's credibility regarding limitations in her upper extremities

Plaintiff contends that ALJ erred by failing to consider the effect of Plaintiff's limitations in using her upper extremities in determining that she had the RFC to perform light work (with certain restrictions). Plaintiff testified at the hearing that she has a hard time using her hands, in vacuuming, tugging, or pulling; she cannot pick up her grandchildren repeatedly. R. 477. Plaintiff also points to Dr. Barber's consultative exam which found that Plaintiff had decreased range of motion in her upper extremities due to pain, tight muscles, and right and left shoulder pain. R. 208. The Commissioner argues that the ALJ considered Plaintiff's testimony that pain interfered with her ability to perform routine daily activities (R. 17), and gave it the appropriate weight.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ

determined that Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limited effects of these symptoms are not entirely credible."

R. 17.

In arguing that her upper extremities limitations were not properly considered by the ALJ, Plaintiff points to the July 26, 2004 MRI of her cervical spine taken right after her motor vehicle accident that indicated a disc bulge indenting the thecal sac at C3-4 and C4-5, a disc bulge and hypertrophy of the facets and ligamentum flava indenting the thecal sac at C5-6, and slight anterolisthesis on C7 on T1. R. 273-76. The Commissioner does not dispute that Plaintiff has an underlying medical condition; rather, the Commissioner argues that the ALJ properly considered this in assessing the severity of Plaintiff's pain.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 16. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). The ALJ complied with those standards. He first determined that Plaintiff had the objective medical conditions – Hepatitis C and back pain secondary to degenerative disc disease of the cervical and lumbar spine – that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> After a careful review of the evidence of record, including the testimony at the hearing, the undersigned is persuaded that the residual functional capacity determined in this Finding 5 takes into account all of the claimant's medically supported symptoms. In addition, the undersigned notes that with the exception of the claimant's allegation that she would need an unlimited sit/stand option in order to work for eight hours; this residual functional capacity determination is not inconsistent with the claimant's testimony.

> The claimant alleges inability to work due to hepatitis, chronic pain, and depression. however, the clinical and objective findings are inconsistent with an individual experiencing totally debilitating symptomatology. Moreover, the objective evidence does not confirm the severity of the alleged pain and other functional restrictions arising from the claimant's documented condition, and the claimant's objectively established medical condition is not of such severity as to reasonably be expected to

> produce disability discomfort or other disabling functional limitations. The [ALJ] finds that the evidence does not reveal any neurological condition severe enough to interfere with the claimant's ability to perform work activity. The claimant has [a] history of hypothyroidism and asthma for which she takes medication. All physical examinations have been essentially unremarkable. There has been no showing that the claimant experienced adverse side effects from her medication or that her medications do not adequately [manage] her impairment. There is no indication of any physiological or psychological abnormalities which would preclude all work activities.

R. 19.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ failed to make specific findings in his decision regarding Plaintiff's limitations with repetitive use of her upper extremities. Plaintiff categorizes the ALJ's lengthy discussion of her credibility in his decision as "some boiler plate language regarding credibility." She argues that the ALJ did not consider adequately her own testimony from the hearing (on R. 477), which she now characterizes more expansively as having "problems using her upper extremities to perform *any* repetitive activity." Doc. No. 11 (emphasis added). Plaintiff actually testified that she had trouble "repeatedly" *lifting* her grandson who was a toddler:

> I do have a hard time using my hands, and I have a hard time even like vacuuming. Any tugging, pulling, anything like that bothers me. I've got a couple of grandkids. One of them I can't even hardly hold. She's so chubby, but she's got a good mom, so I don't have to pick her up very often. In fact, once I bent over to try to pick her up and I almost went down with her and me both. Now I've got a grandson that he's a little bit taller now. I had to stop watching him, too, because he just got too heavy you know I just couldn't carry the weight. And so I stopped watching him and he finally

-16-

got up and was walking and I can kind of pick him up, *but I can't do it repeatedly*. It just seems like – that's why I started having my problems is when I start repeating the motions. Almost like you – when you're constantly repeating something and exercising you overdo it, that's pretty much what it feels like all the time for me.

R. 477.

Plaintiff specifically disputes the ALJ's description of the report of the consulting examiner, Dr. Barber, as "essentially unremarkable" (R. 19), arguing that the ALJ ignored Dr. Barber's finding that Plaintiff had upper extremity limitations due to pain and tight muscles, citing R. 208-209. Plaintiff takes a single sentence in the report out of context. In actuality, Dr. Barber opined in full:

> Physical examination reveals claimant could be limited in standing for long periods of time, because of decreased range of motion in upper extremities, lower extremities, and back, as stated on range of motion report form, due to pain and tight muscles.
>
> Claimant could be limited in lifting and carrying heavy objects.
>
> Claimant is obese and symptoms are possibly perpetuated by excessive weight.
>
> Symptoms could limit the claimant to activities that require the use of upper body movements and coordinated activities with hands.

R. 209. On its face, after listing Plaintiff's other functional limitations with standing and range of motion issues, Dr. Barber's report states that Plaintiff's symptoms could limit her to activities that require upper body movements and "coordinated activities with hands," as though he expects her capable of "coordinated activities with hands," rather than incapable of such activities, as Plaintiff now argues.

The Commissioner contends that the objective clinical findings contained in Dr. Barber's report do not support the imposition of any limitations on Plaintiff's ability to use her arms and hands, let alone the limitations described in her testimony. Dr. Barber provided no explanation as to what extent, if any, he believed Plaintiff's ability to perform the activities was limited. The only applicable

finding contained in Dr. Barber's report noted a "decreased range of motion in upper extremities, as stated on range of motion report form, due to pain, tight muscles and right and left shoulder pain." R. 208. The range of motion report form showed that out of five categories for "shoulders," Plaintiff had the full range of motion for adduction (30/30); and slightly limited in the others: forward elevation (130/150); abduction (130/150); internal rotation (70/80); and external rotation (70/90). The remainder of Dr. Barber's examination of Plaintiff's arms revealed no signs of cyanosis, clubbing, edema or ulcerations, normal sensory perception, full muscle strength in both arms as well as normal grip strength in both hands, and no obvious neurological deficits or defects. R. 208. The ALJ's description of Dr. Barber's report as "unremarkable" was based on substantial evidence in that the reduction in range of motion for Plaintiff's shoulders was slight and Dr. Barber was rather vague in not setting forth any shoulder restrictions.

Moreover, there were no limitations on Plaintiff's upper extremities in the extensive medical records submitted by her treating physicians. Dr. Stephen Reed of Florida Orthopedic Associates treated Plaintiff for neck, back and knee pain from April 24, 2004, through June 27, 2005, and consistently found Plaintiff had good range of motion in both shoulders, that was only limited in the extremes, as well as intact upper extremities, sensation, and motor strength. R. 195-99, 202, 203. Plaintiff's treating physician, Dr. Anthony Joseph, also did not note Plaintiff's limitation on use of her arms and hands during the course of his treatment for Plaintiff's complaints of neck and back pain. R. 231-54.

In this case, the ALJ offered very specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between her statements and the examination

-18-

findings. These are factors the ALJ is directed to consider, and the ALJ's decision is supported by substantial evidence. 20 C.F.R. §§ 404.1529; 416.929.

###### D. Whether the ALJ's hypothetical included all of Plaintiff's impairments

Plaintiff contends that the ALJ's finding that Plaintiff could perform a reduced range of light work, based on the vocational expert's testimony, was not supported by substantial evidence and Plaintiff should have been found disabled. The Commissioner contends that the ALJ properly relied on the testimony of the Vocational Expert (VE) to find that Plaintiff had the RFC to perform a reduced range of light work because such physical or mental limitations were not justified on objective clinical findings.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of the claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Plaintiff contends that the ALJ should have included in the hypothetical to the VE her limitations in using her upper extremities, her mental impairment, and nausea and vomiting. The Court has addressed at length Plaintiff's specific arguments concerning her allegations of limitations from pain in her upper extremities and mental impairment. Plaintiff contends that she could not perform the positions of office helper and merchandise price marker because these light work positions suggested by the VE would require "repetitive" use of her upper extremities for five to eight hours a day, and the photograph finisher would require repetitive use of the upper extremities for eight

hours a day. R. 483. As an initial matter, the VE testified that those positions would require for two thirds of the day that a claimant *frequently* use the upper extremities, "not necessarily repetitive" use of the upper extremities. R. 483. Moreover, as discussed fully above, Plaintiff is not precluded from "frequent" use of her upper extremities.

As more fully set forth above, the ALJ properly determined that Plaintiff did not suffer from a severe mental impairment. Plaintiff also alleges the ALJ should included in the hypothetical nausea and vomiting symptoms from that she experienced due to Hepatitis C. *See* R. 80, 94. Plaintiff was diagnosed with Hepatitis C in 2003 (R. 469), when lab tests revealed elevated liver function tests and a positive HCV ab, most likely related to chronic, active Hepatitis C. R. 166. A March 29, 2004 liver biopsy showed bridging fibrosis, moderate to marked portal inflammation, mild parenchymal injury, and mild piecemeal necrosis. R. 246. Plaintiff denied symptoms of vomiting during her examination by Dr. Barber on June 28, 2005. R. 207. An August 31, 2005 treatment note indicated that Plaintiff had a moderate amount of liver damage based on a biopsy and that she underwent 10 months of initial therapy with good response. R. 223. In November 2005, Plaintiff began her second round of treatment for Hepatitis C and two months later, treatment notes indicate that she was tolerating it well. R. 398. Nausea was definitely a side effect to the Hepatitis C therapy, from the injection. R. 412. Plaintiff was able to work with the side effects by scheduling her work week after the injections side effects wore off. R. 469. By April 2006, Plaintiff told the gastroenterology nurse practitioner at the VA that she was feeling pretty good even though on the Hepatitis C medications. R. 407. By November 2006 notes indicate that she had relapsed, and she stopped HVC therapy, she was instructed to follow up every six months with an abdominal exam. R. 441. She was told that there would be new drugs available in several years and she could try treatment again. R. 441. At the time

of the June 2007 hearing Plaintiff testified that she was no longer on any medication for Hepatitis C. R. 473. Plaintiff points to no medical records in support of her symptoms of nausea separate from when she was receiving Hepatitis C injections.

The ALJ's hypothetical to the VE properly excluded Plaintiff's allegations of upper extremity limitations, mental impairments, and nausea and vomiting. Accordingly, the ALJ was entitled to rely on the VE testimony as to the other jobs in the economy that Plaintiff could perform, and his decision was based on substantial evidence.

## CONCLUSION

The record here shows that Plaintiff suffers considerably from her impairments and that her activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) and the Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 1, 2009.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

-21-

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy